UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIEL JAMES BINFORD, | CASE NO. C14-1302 MJP |
| Plaintiff, | ORDER REVERSING COMMISSIONER, REMANDING CASE FOR AWARD OF BENEFITS |
| v. | |
| CAROLYN COLVIN, | |
| Defendant. | |

THIS MATTER comes before the Court on Plaintiff's Objections (Dkt. No. 17) to the Report and Recommendation of the Honorable Mary Alice Theiler, United States Magistrate Judge. (Dkt. No. 16.) Having reviewed the Report and Recommendation, the Objections, and all related papers, the Court declines to adopt the Report and Recommendation, REVERSES the Commissioner, and REMANDS the case for an immediate award of benefits.

**Background**

Plaintiff raises two objections to the Report and Recommendation: (1) Magistrate Judge Theiler misapplied the relevant legal authorities when finding that the ALJ properly rejected the medical opinions of eight physicians and one ARNP; and (2) Magistrate Judge Theiler

1    misapplied the relevant legal authorities when finding that the ALJ properly rejected Plaintiff's

2    testimony and finding that it was a harmless error to omit any discussion of a lay witness

3    statement.  (Dkt. No. 17.)

**Discussion**

5    I.    Legal Standard

6        Under Fed. R. Civ. P. 72, the Court must resolve de novo any part of the Magistrate

7    Judge's Report and Recommendation that has been properly objected to and may accept, reject,

8    or modify the recommended disposition.  Fed. R. Civ. P. 72(b)(3); see also 28 U.S.C. §

9    636(b)(1).

10    II.    Plaintiff's Objections

11        A.    Medical Evidence

12        Plaintiff argues the ALJ did not provide legally adequate reasons for discounting the

13    largely consistent opinions of eight treating and examining physicians and one treating ARNP in

14    favor of opinions by non-examining state agency doctors.  (Dkt. No. 17 at 3-6.)  Plaintiff argues

15    that the incorrectly discredited opinions overwhelmingly establish that Plaintiff is disabled due to

16    extreme anger, irritability, insomnia, passive homicidal ideation, suicidal ideation, violent

17    fantasies, and multiple prior suicide attempts related to childhood sexual abuse that resulted in

18    hospitalization.  (Id. at 5.)  Plaintiff argues that in recommending that the ALJ's decision be

19    affirmed, Magistrate Judge Theiler incorrectly applied controlling precedent.  (Id.)

20        An ALJ is generally required to give more weight to the opinions of treating and

21    examining physicians than to those of non-examining physicians.  Lester v. Chater, 81 F.3d 821,

22    830 (9th Cir. 1995), SSR 96-2p.  In order to reject the opinion of a treating or examining

23    physician that is contradicted by the opinion of another physician, an ALJ must provide specific

24

ORDER REVERSING COMMISSIONER,
REMANDING CASE FOR AWARD OF
BENEFITS- 2

1   and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 830.

2   "This is so because, even when contradicted, a treating or examining physician's opinion is still

3   owed deference and will often be 'entitled to the greatest weight ... even if it does not meet the

4   test for controlling weight.'"  Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting

5   Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007)).  "The opinion of a nonexamining physician

6   cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either

7   an examining physician or a treating physician."  Lester, 81 F.3d at 831.

8          After review of the Report and Recommendation, the administrative record ("AR"), and

9   the Parties' briefing, the Court concludes that the ALJ did not provide legally adequate reasoning

10  for rejecting the opinions of eight treating and examining physicians and one treating nurse

11  practitioner.  These were not harmless errors, and the Commissioner's decision must be reversed.

12                    i.      Dr. Scratchley

13         In two opinions from 2010, Dr. Scratchley, a treating provider, opined that Plaintiff's

14  mental symptoms and impairments (including Bipolar Disorder and Post-Traumatic Stress

15  Disorder following a significant history of trauma from childhood sexual abuse and related

16  events) were severe enough to cause mental limitations that would preclude work, and were

17  independent from past substance abuse issues.  (AR at 800-01, 810.)  Dr. Scratchley's opinions

18  were given "little weight" by the ALJ for three reasons: (1) whether or not a claimant is

19  "disabled" is a question for the ALJ, not for treating physicians, (2) Dr. Scratchley's opinions are

20  "inconsistent with the medical evidence discussed above," and (3) Dr. Scratchley's opinions are

21  inconsistent with Plaintiff's daily activities.  (AR at 27.)

22         Judge Theiler found that the ALJ gave a "reasonable interpretation" of the evidence,

23  sufficient to justify giving little weight to Dr. Scratchley's opinions, and that Plaintiff's

24

ORDER REVERSING COMMISSIONER,
REMANDING CASE FOR AWARD OF
BENEFITS- 3

1    assignment of errors was an "alternative interpretation" of the evidence.  (Dkt. No. 16 at 6-8.)

2    The Court examines each of the ALJ's reasons in turn.

3            First, the ALJ noted that "the issue of whether an individual is 'disabled' is a question

4    reserved to the Commissioner of the Social Security Administration."  (AR at 27.)  Judge Theiler

5    found the comment to be an "accurate[] and appropriate[]" note.  (Dkt. No. 16 at 6.)  While this

6    may be true, this does not relieve the ALJ of his obligation to provide specific and legitimate

7    reasons based on substantial evidence in the record for rejecting the opinions, and is not relevant

8    to the issue of how much weight Dr. Scratchley's opinions are entitled to.  See Matthews v.

9    Shalala, 10 F.3d 678, 680 (9th Cir. 1993).

10           Second, The ALJ stated that Dr. Scratchley's opinions were "inconsistent with the

11   medical evidence discussed above."  (AR at 27.)  No more detail was provided.  ALJs are not

12   permitted to rely on this type of generic boilerplate critique—they must give specific reasons for

13   rejecting a treating physician's medical opinion.  See, e.g., Garrison, 759 F.3d at 1012-13

14   ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate

15   reasons for crediting one medical opinion over another, he errs….  In other words, an ALJ errs

16   when he rejects a medical opinion or assigns it little weight while doing nothing more than

17   ignoring it, asserting without explanation that another medical opinion is more persuasive, or

18   criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

19   Without identification of the specific evidence that contradicts Dr. Scratchley's opinions, a

20   reviewing court is left to speculate about which evidence the ALJ had in mind when rejecting the

21   opinions, and cannot evaluate whether or not the determination that the evidence conflicted with

22   the opinions is a legitimate one.  This error is especially significant in this case because, as

23

24

ORDER REVERSING COMMISSIONER,
REMANDING CASE FOR AWARD OF
BENEFITS- 4

1    discussed in more detail below, the ALJ's evaluation of the medical evidence contains numerous

2    internal contradictions and inconsistencies.

3          Third, the ALJ found that Dr. Scratchley's opinions were inconsistent with Plaintiff's

4    "range of daily activities, which include volunteering at a music festival, playing guitar in a

5    band, working in the kitchen, writing an autobiographic book, and spending time socializing with

6    family." (AR at 27.)  In so finding, the ALJ mischaracterized the record.

7          The Court finds that Plaintiff's daily activities are not inconsistent with Dr. Scratchley's

8    opinions and do not provide a legitimate reason to discount them.  Plaintiff was for a period of

9    time in a church band, but was kicked out because of conflict with band members—an example

10   of the very social dysfunction Plaintiff alleges prevents him from maintaining competitive work.

11   (AR at 53, 68.)  While Plaintiff was at one point invited to return to the church band, as Judge

12   Theiler found significant, there is no indication in the record he ever did so.  (Dkt. No. 16 at 8.)

13   Plaintiff once volunteered at a religious music festival, but was able to do so for only four hours

14   before being unable to continue volunteering due to his symptoms.  (AR at 57.)  Plaintiff was

15   able to work in the kitchen at the residential drug rehabilitation center where he lived only after

16   several confrontations with his supervisor, which resulted in "very strict disciplin[ary]" measures

17   intended as a "last ditch effort" to accommodate an individual in the rehabilitation program so as

18   "to save that person from going back out" onto the streets.  (AR at 119-20.)  Writing an

19   autobiographical book, a project undertaken as part of Plaintiff's mental health therapy, (AR at

20   54, 67), is a solitary activity which does not speak to Plaintiff's social functioning and ability to

21   appropriately interact with a workplace environment.  Lastly, Plaintiff's ability to maintain a

22   relationship with his son and father, and his ability to sometimes interact appropriately with

23   doctors during one-time examinations, are not indicative of Plaintiff's ability to maintain

24

ORDER REVERSING COMMISSIONER,
REMANDING CASE FOR AWARD OF
BENEFITS- 5

1   competitive work because, as the Commissioner's own regulations caution, ability to function in

2   a work environment should not be determined based on an individual's ability to perform tasks

3   in other settings that are less demanding, highly structured, or more supportive.  20 CFR Pt.404,

4   Subpart P, Appendix 1, § 12.00 C (3).  See also Garrison, 759 F.3d at 1016.

5       In sum, the Court finds that the ALJ did not provide specific and legitimate reasoning

6   based on substantial evidence in the record for rejecting the opinions of treating provider Dr.

7   Scratchley.  This is harmful legal error.

8                      ii.      Other Medical Evidence

9       Plaintiff assigns errors to the ALJ's evaluation of the opinions of seven other physicians

10  and one nurse practitioner similar to the errors assigned to the evaluation of Dr. Scratchley's

11  opinions.  (Dkt. Nos. 13 at 3-17, 15 at 1-8, 17 at 3-6.)  The Court concurs with Plaintiff's

12  assignment of errors and finds that the ALJ failed to provide legally adequate reasoning for

13  discounting the opinions of these physicians.  In the interest of judicial economy, the Court

14  briefly analyzes only some of those issues here.

15      The ALJ erred in discounting the opinion of treating ARNP Nikolova.  The ALJ

16  discounted ARNP Nikolova's opinions of significant cognitive and social limitations that would

17  affect Plaintiff's ability to work because they were "inconsistent with various treatment notes

18  that describe the claimant as cooperative and displaying a good sense of humor" and inconsistent

19  with a therapist once suggesting that Plaintiff become a peer counselor because of his ability to

20  make people feel comfortable discussing their problems.  (AR at 30.)  The Court finds that it is

21  not inconsistent to have mental limitations that foreclose competitive work while occasionally

22  displaying a good sense of humor, or with sometimes cooperating with a doctor.  (Cf. AR at

23  1379, 1382, 1391, 1407, 1414, 1428, 1430, 1441, 1460, 1669 (contemporaneous treatment notes

24

ORDER REVERSING COMMISSIONER,
REMANDING CASE FOR AWARD OF
BENEFITS- 6

1   indicating Plaintiff continued to have violent homicidal and suicidal fantasies; once glared

2   menacingly at doctor throughout entire exam).)

3         The ALJ erred in discounting the opinion of examining Dr. Czysz.  Dr. Czysz opined that

4   Plaintiff is markedly limited in his ability to exercise judgment, perform routine tasks, relate

5   appropriately to coworkers and supervisors, tolerate the pressures and expectations of a normal

6   work setting, and maintain appropriate behavior, among other limitations and impairments.  (AR

7   at 806-07, 805, 1379, 1381-82.)  The ALJ gave Dr. Czysz's opinions "little weight" because they

8   were vague, inconsistent with the claimant's activities of daily living, and inconsistent with the

9   longitudinal medical history, specifically, treatment notes from Dr. Barbour which state that

10  Plaintiff denied experiencing hallucinations.  (AR at 28.)  The Court does not find Dr. Czysz's

11  opinions vague, and as discussed above in reference to the opinions of Dr. Scratchley, finds that

12  the ALJ erred in determining that Plaintiff's activities of daily living are inconsistent with

13  opinions that Plaintiff's limitations would preclude competitive work.  Furthermore, the record is

14  replete with Plaintiff's reports of visual and auditory hallucinations (AR at 562, 656, 807, 841,

15  848, 891, 967, 987, 1263, 1291-93, 1316-17, 1320, 1359, 1385, 1391, 1397) and suicidal

16  ideation consistent with the auditory hallucinations telling Plaintiff to "die" that Dr. Czysz

17  reported, including three suicide attempts which resulted in Plaintiff being hospitalized in a

18  psychiatric hospital.  (AR at 1386.)

19        The Court also notes that while the ALJ used Plaintiff's "longitudinal medical history" to

20  discount the opinions of Dr. Czysz, the ALJ discounted the opinions of Dr. Parker, examining

21  psychologist, because they were "provided before the claimant's alleged onset date" and thus did

22  "not provide pertinent information."  (AR at 28 (giving Dr. Parker's opinion "little weight").)  In

23  other words, the ALJ removed medical evidence helpful to Plaintiff from the longitudinal record

24

ORDER REVERSING COMMISSIONER,
REMANDING CASE FOR AWARD OF
BENEFITS- 7

1    by claiming it was too old to be relevant, and then used the purported lack of helpful medical

2    evidence in the longitudinal record to discount the opinions of an examining physician given

3    during the relevant period.  The ALJ's opinion also contains several apparent internal

4    inconsistencies where evidence that is used to discount other evidence is later itself discounted.

5    For example, the ALJ relied on the opinion of Dr. Schechter for the proposition that

6    psychological examinations did not support limitations of Plaintiff's memory and cognitive

7    functioning, (AR at 23), but later discounted Dr. Schechter's opinion regarding Plaintiff's

8    limitations because her opinions were inconsistent with other evidence (Plaintiff's activities of

9    daily living) and were based on Plaintiff's less-than-credible self-reporting.  (AR at 26.)

10   Similarly, while evidence provided by Dr. Barbour formed a basis for discounting the opinions

11   of Dr. Czysz (AR at 28), the ALJ earlier in the decision determined that Dr. Barbour's opinions

12   were not entitled to full weight.  (AR at 25.)

13          Analogous errors pervade the remainder of the ALJ's analysis of the medical evidence,

14   with the ALJ consistently discounting medical evidence helpful to Plaintiff and consistently

15   crediting any medical evidence that does not support a finding of disability, including crediting

16   and discrediting the opinion of a single doctor depending on whether that portion of the opinion

17   would support a disability finding.  (See AR at 20-30 (ALJ's discussion of opinions of Drs.

18   Quinci, Carstens, Hopfenbeck, and Harmon).)  The ALJ also erroneously relied on Plaintiff's

19   activities of daily living to discredit the opinions of several doctors, including Drs. Quinci,

20   Hopfenbeck and Harmon.  Finally, the ALJ relied on his adverse credibility determination to

21   discount the opinions of doctors that the ALJ found had relied on self-reporting, including Dr.

22   Carstens.  As discussed below, the ALJ erred in discounting Plaintiff's credibility, and thus erred

23   in using the adverse credibility determination to discount medical evidence.

24

1    Having determined that treating and examining medical opinions were incorrectly

2    discounted, the Court finds that the RFC calculated by the ALJ based on the opinions of the non-

3    examining physicians is not supported by substantial evidence in the record.

4                        B.        Plaintiff's Credibility

5        Plaintiff argues the ALJ did not provide legally adequate reasons for discounting

6    Plaintiff's credibility.  (Dkt. No. 17 at 6-8.)  Plaintiff argues that Magistrate Judge Theiler

7    applied the wrong legal authorities when finding that the ALJ provided specific, clear, and

8    convincing reasons in support of his decision.  (Id.)

9        The ALJ found that Plaintiff's medically determinable impairments could reasonably be

10   expected to cause some of his alleged symptoms, but that Plaintiff's statements concerning the

11   intensity, persistence, and limiting effects of his symptoms were "not consistent with the

12   evidence of record, as discussed in th[e] decision." (AR at 21.)  The ALJ found that Plaintiff's

13   testimony conflicted with the objective medical evidence and with his activities of daily living.

14   (AR at 21-24.)  Judge Theiler found that the ALJ provided specific, clear and convincing reasons

15   for discounting Plaintiff's credibility.  (Dkt. No. 16 at 23-28.)  With regards to the medical

16   evidence, Judge Theiler found that the ALJ "included an extensive discussion of the

17   inconsistency between plaintiff's allegations regarding both his physical and mental impairments

18   and the medical evidence of record, providing numerous specific examples." (Id. at 24.)  With

19   regard to Plaintiff's daily activities, Judge Theiler found that Plaintiff's "alternative

20   interpretation" of the evidence did not demonstrate that the ALJ's interpretation was not rational.

21   (Id. at 28.)

22       An ALJ engages in a two-step analysis to determine whether a claimant's testimony

23   regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether the

24

ORDER REVERSING COMMISSIONER,
REMANDING CASE FOR AWARD OF
BENEFITS- 9

1  claimant has presented objective medical evidence of an underlying impairment 'which could

2  reasonably be expected to produce the pain or other symptoms alleged.'" Lingenfelter v. Astrue,

3  504 F.3d 1028, 1036 (9th Cir. 2007) (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.

4  1991) (en banc) (internal quotation marks omitted)).  "In this analysis, the claimant is not

5  required to show 'that her impairment could reasonably be expected to cause the severity of the

6  symptom she has alleged; she need only show that it could reasonably have caused some degree

7  of the symptom.'" Garrison, 759 F.3d at 1014 (quoting Smolen v. Chater, 80 F.3d 1273, 1282

8  (9th Cir. 1996).  "If the claimant satisfies the first step of this analysis, and there is no evidence

9  of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms

10  only by offering specific, clear and convincing reasons for doing so.'" Id. at 1015 (quoting

11  Smolen, 80 F.3d at 1281).

12       The ALJ found that, as to physical symptoms, the degree of severity alleged by Plaintiff

13  was inconsistent with the medical evidence.  (AR at 21.)  The ALJ first discussed Plaintiff's neck

14  and shoulder pain allegations, which the ALJ found were unsupported by the medical evidence.

15  (Id.)  At the August 2012 hearing, Plaintiff testified that neck pain was a problem for him and

16  prevented him from playing the guitar, which he had formerly enjoyed doing.  (AR at 53.)

17  Plaintiff testified that his neck had been bothering him since a workplace injury, but that "[i]n the

18  last few months it's gotten a lot worse."  (Id.)  In finding that the evidence did not support

19  Plaintiff's allegations and therefore discounting Plaintiff's credibility, the ALJ cites to a

20  September 2008 examination and a July 2009 MRI displaying mild arthritic changes.  (AR at

21  21.)  In finding that this evidence conflicts with Plaintiff's testimony, the ALJ erred.  Allegations

22  of pain in August of 2012 are not inconsistent with an exam from four years prior that "showed

23  normal mobility and curvature of the neck" and are not inconsistent with an exam from three

24

ORDER REVERSING COMMISSIONER,
REMANDING CASE FOR AWARD OF
BENEFITS- 10

1   years prior showing incipient arthritic changes, most importantly because Plaintiff testified that

2   neck pain had become a real problem for him in the few months preceding his August 2012

3   hearing.

4        Similar error pervades the ALJ's discussion of the evidence as it compares with

5   Plaintiff's testimony.  For example, in finding that Plaintiff's allegations of symptoms caused by

6   his mental illnesses were not supported by the objective evidence, the ALJ cites examination

7   results that show that Plaintiff had average intelligence and average memory.  (AR at 22-23.)

8   While this may be true, this does not conflict with testimony about social dysfunction related to

9   extreme anger or violent homicidal and suicidal fantasies.  It is entirely plausible that someone

10  with Bipolar Disorder and Post-Traumatic Stress Disorder from a significant history of sexual

11  abuse would have social dysfunction that prevents him from maintaining competitive

12  employment while also being of average intelligence and having average memory.

13       The ALJ appears to have determined that Plaintiff's testimony conflicted with the

14  medical evidence, as a whole, insofar as Plaintiff's testimony would lead to a finding of

15  disability.  Perplexingly, the very medical evidence used by the ALJ to discount Plaintiff's

16  credibility was itself discounted by the ALJ later in the opinion.  In determining that Plaintiff's

17  testimony is not fully credible, the ALJ cited to the reports of Drs. Parker, Schechter, Quinci,

18  Carstens, and Czysz (AR at 21-24.)  Later, however, the ALJ determined that the opinions of

19  these same doctors were not entitled to full weight because they conflicted with other evidence.

20  (AR at 26-30.)  This type of circular analysis results in a standard that would be impossible for

21  any claimant to meet.

22       In sum, the Court finds that the ALJ failed to provide specific, clear, and convincing

23  reasons in support of his determination that the medical evidence conflicted with Plaintiff's

24

ORDER REVERSING COMMISSIONER,
REMANDING CASE FOR AWARD OF
BENEFITS- 11

1   testimony.  The ALJ's finding that Plaintiff's symptoms testimony conflicted with his activities

2   of daily living is also unsupported.  As discussed above, the ALJ mischaracterized the record in

3   describing Plaintiff's range of daily activities.  Plaintiff's activities, as evident from the record,

4   do not conflict with Plaintiff's testimony, and thus do not provide a basis for discounting

5   Plaintiff's credibility.

6                 C.      Lay Witness Statement

7          The Commissioner concedes that it was error for the ALJ to ignore the lay witness

8   statement from Plaintiff's father.  (Dkt. No. 14 at 19.)

9          III.    Remand for an Award of Benefits

10          The ALJ erred by discounting Plaintiff's credibility and by discounting the opinions of

11   the treating and examining physicians in the record.  The ALJ's errors are serious and necessitate

12   remand.  The Court now turns to the question of whether remand should be for further

13   proceedings or for an immediate award of benefits.

14          The Social Security Act provides that courts may affirm, modify, or reverse a decision by

15   the Commissioner with or without remanding the cause for a rehearing.  42 U.S.C. § 405(g);

16   Garrison, 759 F.3d at 1019.  Where there are no outstanding issues to resolve and remand for

17   further proceedings would unnecessarily delay the receipt of benefits, courts may remand for an

18   immediate award of benefits.  Garrison, 759 F.3d at 1019-20.

19          Whether remand for an immediate award of benefits is appropriate is determined through

20   the credit-as-true test, crediting as true the medical opinions and claimant testimony that were

21   rejected by the ALJ for legally insufficient reasons.  Id. at 1019-21.  Each prong of the test must

22   be satisfied in order for a court to remand for the award of benefits:  "(1) the record has been

23   fully developed and further administrative proceedings would serve no useful purpose; (2) the

24

ORDER REVERSING COMMISSIONER,
REMANDING CASE FOR AWARD OF
BENEFITS- 12

1    ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant

2    testimony or medical opinion; and (3) if the improperly discredited evidence were credited as

3    true, the ALJ would be required to find the claimant disabled on remand." Id. at 1020.  Where

4    the three prongs of the credit-as-true test are met, it constitutes an abuse of discretion for a

5    district court to remand for further proceedings, unless the court's review of the record as a

6    whole "creates serious doubt as to whether the claimant is, in fact, disabled within the meaning

7    of the Social Security Act." Id. at 1020-21.

8          Here, the record is fully developed, and further administrative proceedings would serve

9    no useful purpose.  The record has numerous opinions from treating physicians, examining

10   physicians, non-examining physicians, nurse practitioners, and a lay witness.   Plaintiff has

11   already had three hearings before ALJ Larry Kennedy, including one hearing after the ALJ's first

12   decision denying benefits was vacated by the Appeals Council.  (AR at 45-144.)  Second, as

13   discussed above, the ALJ failed to provide legally adequate reasons for rejecting the medical

14   opinion evidence from the treating and examining physicians and the testimony from Plaintiff.

15   Third, if the improperly discredited evidence were credited as true, the testimony and medical

16   evidence from treating and examining physicians clearly establishes that Plaintiff would be

17   found disabled on remand.  Because review of the record as a whole does not create serious

18   doubt that Plaintiff is disabled, the Court remands the case for an immediate award of benefits.

19                                          **Conclusion**

20         The Court finds that the Commissioner's decision contains harmful legal error and is not

21   supported by substantial evidence in the record, especially in regards to the evaluation of

22   Plaintiff's credibility and of the medical opinion evidence.  Accordingly, the Court declines to

23

24

ORDER REVERSING COMMISSIONER,
REMANDING CASE FOR AWARD OF
BENEFITS- 13

1   adopt the Report and Recommendation and REVERSES the Commissioner.  The case is

2   REMANDED for an immediate award of benefits.

3

4           The clerk is ordered to provide copies of this order to all counsel.

5

6           Dated this 16th day of June, 2015.

7

8

9           _____
            Marsha J. Pechman

10          Chief United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER REVERSING COMMISSIONER,
REMANDING CASE FOR AWARD OF
BENEFITS- 14